(No. 30229.—

EDWARD ADAMS, Appellee, *v.* ANNA ROBINSON ADAMS *et al.,* Appellants.

*Opinion filed November 20, 1947—Rehearing denied Jan. 15, 1948.*

F. FRANCIS STRADFORD, and A. M. BURROUGHS, both of Chicago, for appellants.

OHRENSTEIN & LEFKOW, of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

Edward Adams filed suit in the superior court of Cook County against Anna Robinson Adams, his wife, seeking partition of certain property situated in the city of Chicago, improved with a three-family apartment building, which property was owned by the plaintiff and the defendant by virtue of a deed of conveyance from Robert W. Gormoll dated July 20, 1934, by which deed of conveyance the property was conveyed to Edward Adams and Anna Robinson Adams, as joint tenants and not as tenants in common. This partition suit was consolidated with a divorce action in which Anna Robinson Adams was the plaintiff and in which she sought a divorce on the grounds of extreme and repeated cruelty. The partition suit was referred to a master in chancery who took the proofs and made his report recommending partition. Exceptions filed to the report of the master were overruled upon a hearing and the court entered a decree of partition in conformity with the recommendations of the master, the court ordering that the premises be partitioned, that Anna Robinson Adams pay to her judgment creditor, Callie McKinley, the

sum of $877.15 with interest thereon and that the plaintiff, Edward Adams, pay to John Stelk $300, being the amount of a loan made by Stelk to Edward Adams, individually, and secured by a mortgage on his interest in the premises. The court likewise granted the wife a divorce and ordered the husband to pay her as alimony the sum of $300 each year, commencing on the first day of April, 1947, payable $25 per month in advance and that he pay the wife's attorneys the sum of $150 as attorneys' fees. The court decreed that the wife was entitled to dower in the real estate and, by computation of her life expectancy, fixed the amount at $750, and the court ordered that the homestead of the wife be set out to her from the entire premises.

Anna Robinson Adams and Callie McKinley, the judgment creditor, appeal from the decree on the grounds that the court erred in refusing to consider evidence in support of Anna Robinson Adams's contention that Edward Adams held his one-half interest in the property in trust for Anna Robinson Adams, because of his fraudulent conduct in having the property conveyed to him and his wife in joint tenancy without her knowledge or consent and without any consideration passing from him for the purchase thereof. They also contend that the court erred in ordering the wife to pay the entire amount of the Callie McKinley judgment from her interest in the property. They further contend that the court committed error by allowing unto the husband attorney's fees, master's fees and court reporter's fees in the partition action because there was a good or substantial defense in opposition to the complaint, therefore precluding the husband from allowance of fees out of the entire property.

Edward Adams has assigned cross errors as follows: He contends that it was error for the court to fix the value of the homestead at $1000 without ascertaining the life expectancy of Anna Robinson Adams. He also contends that it was error for the court to award dower to his wife

out of the entire estate including the estate of homestead. He likewise contends that it was error for the court to grant the wife alimony and solicitors' fees on the grounds that she was without adequate means of support, since the record shows that her financial status was equal to, if not better than, that of her husband.

The facts in this case are quite involved and it is apparent from reading the record that there is bitter feeling between the parties which has resulted in considerable litigation between them, thus complicating the proper determination of this case. Anna Robinson Adams, who will be hereinafter referred to as Anna, purchased the property in question in the year 1921 prior to her marriage with Edward Adams. She made payments on the purchase price, receiving a deed of conveyance on May 2, 1925, at which time she gave back a mortgage to secure payment of the balance. Edward and Anna were married on January 6, 1928, and were subsequently divorced on December 17, 1928, the court finding in the decree that Edward had no right, title or interest in this property. Subsequent to the divorce, the mortgage upon the property became in default and foreclosure proceedings were instituted against Anna. Subsequently, a master's deed was issued to Robert W. Gormoll. On November 15, 1933, Anna and Edward were remarried. At that time there were some negotiations with the Home Owners Loan Corporation for a loan sufficient to permit Anna to repurchase the property from Gormoll. It appears that Edward, either by agreement or of his own initiative, took over these negotiations and that in July, 1943, the Home Owners Loan Corporation loaned unto both Edward and Anna sufficient money to permit them to repurchase the property from Gormoll. A deed of conveyance was obtained by them on July 20, 1934, which placed the property in joint tenancy, and a mortgage was executed by the Adams' to the Home Owners Loan Corporation to obtain the funds for the re-

purchase of the property. After the property had been repurchased, the parties continued to live therein making monthly payments therefor, Edward doing work on the premises and keeping the same in repair until 1945 when the parties separated. Anna filed suit for divorce on the grounds of cruelty. She also filed a complaint in the superior court wherein she sought to have removed as a cloud upon her title to said real estate a deed previously given by her to Edward conveying to him all of her right, title and interest in the property, alleging that there was no consideration for the giving of this deed. In December, 1945, a decree by consent of both parties was entered in that cause setting aside said deed for want of consideration and ordering it removed as a cloud on Anna's title. In this decree, the court found that the interest of the parties was each an undivided one-half interest as joint tenant and that they had acquired such title by deed of conveyance from Robert W. Gormoll and wife dated July 20, 1934.

In 1946 Edward filed his complaint to partition the real estate in question, and in said complaint he sought to have removed as a cloud on his title a certain bailiff's deed to Callie McKinley dated August 30, 1940, conveying to her all of said premises in satisfaction of a judgment obtained by Callie McKinley on March 6, 1933, for $635 and costs against Anna. Edward alleged that the deed was a nullity as to him, because Edward was not a party to the judgment and further that the bailiff had failed to set aside his homestead in said premises.

Anna filed her answer to this suit by which she alleged that it was not her intention that her husband have any interest in this property at the time that it was acquired by a deed from Gormoll and that in negotiating for this deed Edward was acting as her agent, that his conduct in obtaining the deed in joint tenancy was a fraud of her rights and, therefore, that the only interest of Edward

in the real estate was as trustee for her use and benefit.

The partition suit was referred to a master in chancery and after hearings at which all the parties testified, including Anna, the master reported to the court that the equities were with Edward and that he was entitled to have a partition of the premises. He further reported that the deed from the bailiff to Callie McKinley should be vacated and set aside, that it be held void and removed as a cloud on the title to the entire premises for failure to set aside the homestead, but that Anna should be decreed to pay to Callie McKinley the full amount of the judgment obtained against her together with interest from the date of judgment. He further recommended that upon the partition the homestead be awarded to Anna, or that the value thereof of $1000 be awarded to her in case of a sale.

As previously stated, the exceptions filed to the report of the master were overruled and the court entered a decree of partition in conformity with the recommendations of the master.

The testimony taken by the master is voluminous and it is unnecessary to recite the same in detail in this opinion, since it will serve no useful purpose.

We shall first consider the propriety of the master's ruling and the chancellor's finding that Anna could not raise in this proceeding the contention that her husband held title to an undivided one-half interest in the property in trust for her on the ground that he fraudulently had the deed of conveyance made to both parties as joint tenants rather than to his wife individually. It appears that the basis for the master's ruling and the court's decision on this aspect of the case was that in the suit brought in 1945 by Anna to set aside the deed of conveyance from her to Edward of her interest in the premises, the court, in addition to holding that the deed should be set aside, found that the parties were the owners of this property

equally as joint tenants. A copy of the decree in that cause is in this record. It appears that the decree was entered by consent, it being recited that Edward had filed answer in said suit in which he admitted that there was no consideration passing between the parties for the deed. In that decree it is stated, "The court further finds that the parties hereto have agreed that said described real estate is now of the approximate value of Eight Thousand Dollars ($8000.00) ; that the interest of the parties hereto is as to an undivided one-half interest as joint tenants thereof." In the case at bar, it appears that counsel for Edward contended that this decree was *res judicata* and precluded Anna from raising any question as to Edward's ownership of a one-half interest in the property. Counsel for Anna contend that since this decree in the prior suit was a consent decree and did not constitute an adjudication of a litigated matter, therefore the doctrine of *res judicata* does not apply. They have cited many cases in support of this well-established doctrine and it is not necessary for us to discuss them or in any way distinguish them since although the term *"res adjudicata"* has been used by the chancellor, by the master and by counsel, we believe that the proper term would be an estoppel.

Counsel for Anna do not contend that at the time the prior consent decree was entered she did not agree to the terms thereof and there is no contention made that she was not cognizant of the terms of the decree. It is our opinion that she is therefore estopped to assert that Edward was not the owner of an undivided one-half interest in the property. It is true that the prior decree did not constitute an adjudication of a litigated matter. However, the same certainly did recite an agreement between the parties as to their interests in the property and since no fraud or collusion or lack of knowledge thereof is asserted we hold that Anna is bound by the terms thereof. It appears in this case that there is considerable feeling

between the parties and that litigation has been motivated, no doubt, by desire to cause expense and inconvenience to one another. The parties cannot relitigate a question which has been settled by a consent decree. (*Bergman* v. *Rhodes,* 334 Ill. 137; *Sims* v. *Powell,* 390 Ill. 610.) It is apparent from this record that Anna's claim of fraud is an afterthought, and if she was indeed serious in presenting this contention she would have presented it in her prior suit between the parties. Parties may not litigate piecemeal. At the time she filed the prior suit, she had the same knowledge of the alleged fraudulent conduct of her husband as she had at the time she filed her answer in the case at bar. We believe that under equitable principles, in view of her previous agreement as to the interest of her husband in the premises, she is estopped to raise that question in the case at bar and that the action of the master and of the chancellor in refusing to consider that contention was proper. It should be noted that the master permitted her, subject to objection, to produce evidence of the alleged fraud. Even a review of that testimony by this court does not show any basis for her contention. When this property was acquired from Gormoll, Anna no longer had any interest therein. Neither party had any funds to put in the property other than the proceeds of the loan. Both parties have worked to pay off the loan and their interests in the property are the same.

Callie McKinley, in her appeal, contends that the decree is erroneous because the same collaterally attacks the judgment which she obtained against Anna in the municipal court of Chicago. It is conceded by this appellant that at the bailiff's sale no estate of homestead was set off to Edward. The rule is well established that in certain cases a failure to comply with the statute with reference to homestead does not always invalidate the title of the purchaser. However, this is a chancery proceeding and a court of equity has the power to adjust the equities between

the parties if such adjustment does not contravene the provisions of the statute. (*Johnson* v. *Muntz,* 364 Ill. 482.) Counsel for Callie McKinley state in their brief that she was always willing to accept payment of her judgment and release her interest in the property. The decree which has been entered in this cause does not attack the validity of her judgment but, on the contrary, amply protects her interest in the property. We believe that, since judgment upon which her interest in the property is based was a judgment against Anna for a pre-existing debt of Anna's the court properly held that Callie McKinley should be paid from the interest of Anna in the property. There is some evidence in the record indicating that Edward had knowledge of this indebtedness and that in his negotiations with the Home Owners Loan Corporation, he and his wife authorized the payment of this indebtedness from the proceeds of the loan. However, we do not believe that such evidence is sufficient to warrant this court in disregarding the recommendations of the master and the findings of the chancellor with reference thereto.

It has also been contended by Callie McKinley that 'Edward could not maintain an action to remove the bailiff's deed as a cloud upon his title on the ground that he did not allege and prove that he was in possession of the property when the action was instituted. It is apparent from the pleadings in this case that this is primarily a partition suit where, as an incident to the partition of the property, it was necessary to determine the validity of certain other liens or interests affecting the property, and we do not believe that in this case it was necessary for Edward to either allege or to prove that he was in possession of the property at the time suit was filed. He alleged his ownership therein and substantiated his allegation with proof.

The appellants have also contended that Edward was guilty of *laches* in not presenting his claim to the property until the filing of this suit. A careful review of the evi-

dence and of the pleadings does not disclose any lack of diligence on Edward's part. It will be borne in mind that he and his wife ceased living together in 1945 and that later in 1945 his wife filed suit against him to set aside the conveyance that she had previously given to him covering the entire premises. The decree was entered in that cause December 23, 1945, and this suit followed immediately. There is no *laches* or lack of diligence upon his part.

Lastly, it has been contended that the chancellor should not have allowed attorneys' fees to Edward because Anna presented a substantial defense. In this case it is to be noted that she claimed the entire title and denied that Edward had any of the title, and prosecuted her case before the master, and in the circuit court, and to this court. We have held that the provisions of the statute in the allowance of solicitors' fees are based upon the theory that the plaintiff prosecutes the suit for the benefit of the cotenants, and, in such case, when the interests are correctly set up, a fee for the plaintiff's attorney is allowed. In *Seeberger* v. *Seeberger,* 325 Ill. 47, we said: "It is contended by appellant that in a partition suit solicitor's fees cannot be allowed to a complainant where a defense is made in good faith. This suit was not an amicable one. The defense interposed by appellant was of a substantial character and was made in good faith. Under this state of the record appellee was not entitled to have her solicitor's fees taxed as costs." (Citing: *McMullen* v. *Reynolds,* 209 Ill. 504; *Jones* v. *Young,* 228 Ill. 374; *Stortz* v. *Ruttiger,* 249 Ill. 494.) It appears to us that where a party to a partition suit denies title in the other party, and claims title in herself, and prosecutes the suit to this court, a defense is made in good faith, and the facts show that her defense was substantial, although not sustained by us. The court erred in allowing solicitor's fees for services to plaintiff in the partition suit.

We pass next to the cross error assigned by Edward that the estate of homestead is a life estate and that the value thereof should be ascertained with reference to the life expectancy of Anna. In *Brod* v. *Brod,* 390 Ill. 312, we held that where a husband institutes partition proceedings against the wife involving the home, he must either *bona fide* provide another suitable homestead for her or set off to her under the statute the homestead interest of $1000. The decree in this case is in accordance with our holding in that opinion and is therefore proper.

It is also contended that dower should not have been awarded in the whole estate but only upon the residue after deducting the value of the homestead. The decree does not show upon what basis the amount was fixed. In cases where there is a partition of interests held by tenants in common or joint ownership it "is subject to certain legal incidents not applicable to estates owned in severalty. The liability to be divested by partition of the lands is an incident which the law affixes to the seizin of cotenants. Where the husband's cotenancy is, by either voluntary or involuntary partition, turned into an estate in severalty in a part, only, of the land, the wife is remitted to her inchoate right in the land which her husband takes in severalty by such partition." (*Brady* v. *Paine,* 391 Ill. 596.) Under this rule the value of the dower assigned to Anna should have been based upon the value of the part in severalty belonging to Edward. The decree does not show upon what basis the amount was fixed, and whether it was taken after the value of the homestead had been deducted. Since the case must be reversed because of the improper allowance of solicitors' fees this particular point can be disposed of upon remandment.

Counsel for Edward have complained that the court erred in allowing unto Anna alimony and solicitors' fees in view of the pecuniary circumstances of both parties.

It is true that solicitors' fees should not be awarded where a wife is more able than the husband to pay her solicitors. (*Klekamp* v. *Klekamp,* 275 Ill. 98.) It is also true that the pecuniary circumstances of the parties should be considered in determining the propriety of an alimony award. The record shows that Edward is a laborer, is able-bodied and is able to support himself and to pay alimony. Anna is 66 years old and her sole income consists of operating the premises involved in this proceeding as a rooming house. Litigation between the parties has been of long duration and necessarily costly. We do not believe that the award of alimony and solicitors' fees to Anna was erroneous in view of the financial circumstances of the parties. Edward does not contend that he is unable to pay the alimony as decreed by the court and we believe that there is sufficient basis of need shown by Anna to warrant her in being allowed alimony by the court.

For the reasons above stated, the decree of the superior court of Cook County will be affirmed in part and reversed in part, and the cause remanded, with directions to proceed in accordance with the views expressed herein.

> *Affirmed in part and reversed in part,*
> *and remanded, with directions.*